May it please the Court, John Belcher on behalf of Appellant Intri-Plex Technologies. I would request the Court's deference to reserve five minutes for rebuttal. Jumping to the heart of the matter, the instant case is a classic case of a tort with a tortfeasor having a single bad act simultaneously injuring multiple victims. Classically, this type of factual scenario arises in bus or automobile accidents. In this particular case, a defective filter which allowed chlorine to leach into a hard drive part resulted in the dissemination worldwide of defective parts. One of the biggest victims of the, quote, bad act or the negligence of Crest was a company in Thailand which had one million hard drives. You know, Counsel, we're pretty familiar with the facts, and I think you'd better leap directly into whether you can persuade us that this isn't claim splitting. Yes, Your Honor. The lead authority on whether a single primary right or two primary rights are violated with multiple victims is Witkin. And what Witkin says is, quote, where two or more persons are injured in the same accident, the primary right of each is violated, and there are as many causes as there are injured plaintiffs. Are you saying the insurance company and the insurer are two different parties? Absolutely, and there's a reason for that here, Your Honor. The reason is that the insurance policy that was issued only insured property owned by others. Although the premium in this case was paid by Intraplex, the only coverage issued by that policy was if there was injury to someone else. And in this particular case, what happened was the insurance company, Atlantic Mutual, paid $750,000 to a company in Thailand called KRP. And the reason for that was that although the premium was paid by Intraplex, the only coverage present was if someone else's property was damaged. And in fact, the situation is akin to the Flynn case, in which you have a single accident and you have the passenger who's injured, and then you have the driver. And in that case, the indemnity claim was found to be a different primary right than that of the driver. And there was found to be no claim splitting.  Under the policy, the insured property is property of others. It's not uncommon, Your Honor, under a policy to have multiple insurers. And in this particular case, anyone who is a customer of Intraplex is insured under the policy. And in the declaration of Lonnie Faloon that was offered, the only insurance in place was insurance for property owned by others. So let me give you an example of the type of policy this is. But the insured, that doesn't change the insured, does it? Yes, it does. It's not at all uncommon in a construction contract for a contractor to buy an insurance policy that insures the owner of the building. And in this particular case, the premium was paid by Intraplex. And it's listed as an insured. But the only coverage is for actual property damage suffered by others. In other words, we wouldn't Let's go back to insuring the building issue. In that case, it's not just a question of who pays the premiums. It's a question of who's a named insured on the policy. And so in your hypothetical, it wasn't quite complete as to who is the actual insured. It may be that third parties are the beneficiary, in effect, of an insured relationship. But you can't just say, well, other people get the benefit, therefore they are the insured. Oh, it's not. I mean, insured has a legal meaning, both under the terms of the policy and under the law. Not at all, Your Honor. In fact, it's common that a single insurance policy may have multiple insureds or It might, but it depends on the terms of the policy, correct? Correct. And in this particular case, we could have purchased a policy that insured us for loss of inventory, that was a comprehensive general liability policy that insured Intraplex for its own losses. This is a very unique policy. And the only coverage under this policy was for damage to property owned by others. And that isn't disputed. But who's the named insured on the policy? The policy was paid for and issued to K, was issued to Intraplex. And they're the insured. They are insured for indemnity, for liabilities to damages caused to property of others. I understand that. So they are the insured under the definition of the policy, correct? The declarations page lists them as insured for liabilities that they have where property of others is damaged. So, for example, you could have a situation. So let's just stop there so we can – not quite so fast. So they are the insured under the terms of the policy, correct? Intraplex is. They are not a beneficiary of the process of the policy. Do you want to hear my question again? I've heard your question, Your Honor. I asked, are they the insured under the policy? Not for their own property losses. They are on the declarations page listed as a defined entity, which is the named insured. They are not insured for any of their own personal losses. And there's a key distinction here. But that goes to coverage. That goes to the scope of the coverage, not to the insurer, does it not? Well, it goes to the fact that they're never entitled to personally collect any money. They're only entitled to be indemnified if someone else suffers damage to their property. For which they would be responsible? I'm sorry? For which they would be responsible? For which they would have to indemnify a third party if they're in the chain of liability, correct. Do you know of any case that has split a subrogation claim and the insured's personal claim? Well, in terms of the ñ well, where there are multiple injuries, Your Honor, to multiple parties, it hasn't been squarely presented under California law. There are two new cases that have come up that have not addressed it in the context of subrogation, but since the briefing, there have been two California cases that have addressed claim splitting. But in that context, Your Honor, in terms of subrogation, I'm not familiar with a case where it's of this factual situation, where all of the money went to the passenger in the car, and then the insured brings his own claim. But since the ñ intellectually, there should be no distinction. Because either it's the same primary right or it is not the same primary right. If it's not the same primary right, claim splitting doesn't apply. And unfortunately, under California law, what happened here was the district court was railroading this case through the system. The district court allowed no oral argument. The district court allowed no amendment. The district court made findings. Oh, there's nothing in the record to suggest that Crest knew about these other claims. Of course not. Because we never even darkened the door of the courthouse. That in all deference to the caseloads of the district court, and in terms of what the factual record is here, based upon judicial notice and no opportunity for argument or no requesting a tender or proffer of what an amended complaint would show, on this rather thin record, the district court threw the case out without granting any opportunity for leave to amend. And in terms of the status of the record. Counsel, let's back up. Could your client have sought to intervene in the state court action? I'm sorry? Could your client have sought to intervene in the state court action? Yes. It could have, but of course. And it knew about the case that was going on in the state court. It had notice. It had notice after the case had developed to a certain point. Correct. And at that point, it had an opportunity to intervene if it wanted to. Correct. And at the same point, Crest also had an opportunity to join Intraplex. And in the Mel Rapkin case, which they cite, the California Court of Appeals said that we're affirming this particular judgment, because the underlying case went all the way to judgment. If there was a settlement, however, and you have a tortfeasor that knows there are multiple claimants out there, it's on the tortfeasor to initiate a motion for joinder. And in this particular case, the way they got around that is in their brief they say, oh, we didn't know that there were multiple claims out there. And the court said in their findings, we're not going to apply the estoppel theory of the Mel Rapkin case, because there's nothing in the record to suggest that Crest knew about the claims that Intraplex had. Well, the fact of the matter is, Your Honor, in terms of whose burden is it? The California Court of Appeal, which has spoken to who has the impetus to initiate joinder, has ruled squarely that it's on the part of the tortfeasor. And in terms of what was going on in that action, the only thing that was going on there were a bunch of defective drives in Thailand. And in terms of the scope of the damages that they had, that was a universe of damages that was there. The universe of damages to Intraplex itself, lost profits and so on, was a different entity and a different type of injury. Not only did they lose inventory, but they lost profits and they lost market share. I want to know which cases in California say it's the tortfeasor's obligation. Mel Rapkin, which is the lead case cited by the district court and by the counsel for Crest, that page makes the following ruling. However, where the tortfeasor is aware of the insurer's subrogation claim and nonetheless chooses to settle the insurer's claim independent from the insurer's claim, the tortfeasor may not invoke the rule against splitting a cause of action to foreclose a subsequent action by the insurer. And what Crest says in their brief at page 25 is, at the time of the prior State court action, as between Crest and Intraplex, there was no subsequent action by the insurer. And so, in that particular case, it was reversed, in that the subsequent action would have been by the insurer. But the rule that if you know about another claimant out there and you settle, it doesn't make a difference who files the first case. And what Crest says in their brief at page 25 is, at the time of the prior State court action, as between Crest and Intraplex, only Intraplex knew of the existence of its uninsured claims. Well, that's nowhere in the record. They're going forward and talking about what their state of mind is on a 12B that was sustained without leave, without an ---- Well, let's talk about that. Did you or anyone on behalf of your client go back and ask for leave to amend once the dismissal order came down? The judgment was entered before we had an opportunity. The court allowed no oral argument. The court entered judgment immediately. The first notice we ---- Did you go back and ask after judgment was entered for relief from the judgment? No, we took our relief here. Once a court enters judgment and says, I'm entering judgment. I'm not going to allow you to argue and I'm not going to grant you leave to amend. And the court specifically said, I'm not going to grant leave to amend. The loss that the insurance company paid for, wasn't that a loss for which Intraplex would be responsible? So wasn't it, in essence, Intraplex's loss? Not at all. The actual hard loss, the damage, was a million hard drives that KRP owned. That KRP also had a strict liability claim going up to Crest. And once it paid those damages, which were whatever losses KRP had, its claim was no better and no worse than KRP's. The insurance company Atlantic Mutual hands a $750,000 check to KRP. They walk into court and say, Crest, we're unhappy. If Crest goes in and proves, well, you know what? You overpaid. There was only $38 worth of damage to those hard drives. We've gone into Thailand and proven that the damages are not that big, that they stepped into the shoes of the person whose damages that they paid. And if it turned out that there was contributory negligence, and in terms of the damage to the hard drive that KRP should have known to go do a test before they incorporated in the hard drive, whatever defenses would have applied to an action directly by KRP versus Crest applied to the carrier. And it's true that we're in the food chain or the manufacturing chain, just as Bendix may provide bad breaks to Ford, which provides it to a dealer, which provides it to an ultimate consumer. But in this particular case, not one penny of the money that the insurance company paid, paid for any of our lost inventory, paid for any of our lost profits, or paid for any of the damages that we suffered. Which rights were the subrogation? Whose rights did the insurance company say they were subrogated to when they filed the lawsuit? The lawsuit itself is vague, but the brief admits that they, quote, filed a customer's claim for damages. This is Crest's brief at page 7. And in the — Customer's claim against Interplex, right? Right. Well, no, no. It didn't — no. A customer's claim for damages, period. The customer, KRP, had claims all the way up the food chain, including claims against Crest, that the customer's claims were not just limited to those against us, but yes, the claims against — But the insurance company wasn't there to be paying out claims for the customer vis-a-vis any other third party, were they? Well, it was there to get a release. Let's be practical about it. You said it's all the way up the food chain. You're making all these statements, but the — your client is insured. The third party is the customer of your client. The customer incurred damages vis-a-vis your client, correct? Right. Among others. Right. And then the insurance company pays out on behalf of your client, correct? For damages to that customer, correct. And in this particular case, it would be as if you had an insurance company that insured the driver of the bus. The driver of the bus is injured, and the driver of the bus has a derivative liability with respect to a third party. In terms of California cases, what's going on here is the district court is and you have 30 people that are injured. I don't believe it's appropriate under the primary rights theory to allow each of the 30 to sue separately. That's what California law is. He may not like it for his doctrine, but there has never been a case, never, and there's no case cited by Crest in which injuries to different parties are found to be violation of the same primary right. And that's what happened here. All of the money wound up in the hands of KRP. I'd like to reserve the rest of my time. And would you just clarify one point? Sure. In which document did the judge say that there would be no leave to amend? Well, he sustained it without leave, I mean. No, but you told me in our discussion that the judge specifically said that there would be no leave to amend. And I'm looking for that statement. And I'm just wondering if I'm missing it or I'm looking in the order of the motion to dismiss. Why don't we do this? The clerk has a little piece of paper where you can submit supplemental authorities. Once you find the citation where the judge says that you do not have leave to amend, you can just make a notation of the record citation and give a copy to the clerk with a copy to opposing counsel. Sure. There was nothing orally said. Whatever's in the order. Here's my problem is you're making a lot of statements today and waving your hands. And when you make a statement like that in response to a question of, you know, what's the posture of this and what the judge did and didn't do, you know, I sit up, especially if the judge says, you know, there's no leave to amend. So if the judge didn't say that and was silent, that's different than if the judge said that. And I'm just trying to get to the bottom of what the judge did and didn't say. My understanding goes. All right. Good morning. May it please the Court. Excuse me. My name is Marcus Costner. I'm appearing on behalf of the respondent, Crest Ultrasonics Corporation. And we're here today asking that this Court affirm the district court and apply well-settled rules about subrogation and claim splitting so that my client doesn't have to defend the same lawsuit twice. Could you discuss first the California laws to whose obligation it is to interplead? Certainly, Your Honor. Your Honor, the statements in the California cases say that the insured and the The defense, the res judicata or plea and abatement, if the cases are going on at the same time, is a defense that may be raised by the alleged tortfeasor. I think because that is the state of the law, the alleged tortfeasor does not have any duty to seek the joinder of one of the two parties sharing the claim that is missing from the lawsuit. Now, if Crest had noticed that the manufacturer had other claims beyond liability to customers, would that impose an obligation on Crest to join Interplex? I don't think that it would, Your Honor. I don't think there's any rule requiring an alleged tortfeasor to make somebody sue them. It's — if you have a claim against someone, it is your duty not to sleep on your rights and to bring that claim. And there isn't any California case to the contrary? Not that I'm aware of, Your Honor. I think one of the points Mr. Belkin makes is that this is slightly different because it's not in a traditional sense insuring the direct losses of an insured, whether it's lost profits or whatever, but it's an indemnity against third-party losses. Would you address that issue? Yeah. Your Honor, I've never seen a California case that supports the argument that opposing counsel was making. My understanding of subrogation law is that when — and that it's black-letter law — that when an insurer satisfies a claim and acquires a right of subrogation, it can only acquire it from its insured on whose behalf it satisfied that claim. Now, whether the money that the insurance company paid went to its insured or whether it went to a third party for the benefit of its insured against whom the law of subrogation is simply that the insurance company steps into the shoes of its insured and so on and obtains the right to pursue any rights that its insured had. Are you, in essence, saying that the liability that Interplex faced was basically its loss and therefore it's just another type of damage that Interplex suffered to loss to third parties as well as to loss it suffered to its own property? If I understand your question, Your Honor, yes, I believe that's what we're contending. I mean, this was — this is — this is another loss that Interplex suffered. Interplex — well, let me back up a step. Crest allegedly sold Interplex a defective dryer and a defective HEPA filter with the result that when Interplex ran its computer baseplate parts through that equipment, it became contaminated. That's the allegation. Then Interplex then sells those products to somebody who incorporates them in their products without doing quality control, I guess. Sorry, I don't mean to wander from the record. And then says to Interplex, hey, you know, you guys sold us bad parts and we want to be made whole for that. So — The loss is a liability loss of Interplex. Interplex has liability to cave, whatever it is, and the insurance company pays that loss, which would be a loss that Interplex would otherwise have to pay and then become subjugated. I think so, Your Honor. Become subjugated. Yes. I mean, this — neither of these lawsuits had anything to do with any direct claim that KRP might have had. That's — sorry, that's the customer of these baseplates that KRP might have had directly to Interplex on strict product liability. There's nothing in the allegations of either complaint that suggests that KRP was in any way a party to these proceedings or the subrigore of any rights to anyone in either of these lawsuits. Thank you. I just wanted to address one point in the record. The opposing counsel mentioned that the underlying lawsuit was vague as to — this is the one that we sought judicial notice of in the district court, that it was vague as to exactly what right was being asserted, what subrogation right was being asserted by Atlantic Mutual, the insurance company. And I just want to direct the Court to page 50 of Appellant's excerpts of the record and 51, which is paragraph 14, of Atlantic Mutual's complaint. And in there, it states in the last sentence that alleges that Atlantic Mutual was subrogated to the rights of its insured. And then somewhere earlier in the complaint, and I'm sorry I don't have the paragraph number, but somewhere earlier in the complaint, they allege that they're insured as Interplex. I'm going to keep this simple. If the Court has any additional questions of me, I'm happy to address them otherwise. It appears not. Thank you. Thank you. There were two cases addressing claim splitting I briefly wanted to bring to the Court's attention that were not included in the briefing. The first — What you should do is you can talk about them, but you must put them on a gum sheet, give copies to everybody. Yes, Your Honor. You think that's the appropriate way to handle it after the — Under our rules, we have a 28-J rule where you submit any, you know, after-discovered or after-filed cases. Again, you can bring them to our attention now, although opposing counsel may or may not have seen them, but you're welcome to discuss them. I wanted to get right to Judge Fletcher's point, which is whose burden is it to initiate a motion to consolidate? And this is the Mel Rapton case, which they relied on, the District Court relied on. Quote, It is unreasonable for a tort feeser to expect a settlement and release of all claims to bind a known entity who was not a party to the settlement and was not given an opportunity to take part in the settlement. So the question is, is Intraplex a known entity? Well, we know from the complaint that they were in a contractual relationship, and both the District Court and PRESS in their briefing argued to this court that you can make a finding that they didn't have knowledge. But there's a problem. It's a 12-B motion. And what the District Court did in order to get around that problem was say, well, we don't see anything in the record here that addresses what the scope of PRESS knowledge was. That's why you have discovery. That's why it is that you go forward. And in terms of the Ninth Circuit applying the same rule in the Weeks case, which was an Arizona case, similarly, the Ninth Circuit Weeks v. Atlantic National Mutual also found where you have two parties that settle, they know there's a personal injury claim out there, they're not a party to the settlement, they're not invited to take part in the settlement negotiations, that the rule doesn't apply. Let me just ask you one final question. This contamination occurs, and Interplex says, what are our losses? Their losses are to their own property, and aren't their losses also their exposure to a third party? And so isn't it just a form of loss that is being compensated for by the insurance company, that's an Interplex loss for which there's subrogation? No, that it's a loss to both a third party, a direct loss. And he made a statement that was absolutely false and incorrect. The statement he made was there was no direct claim by KRP that ran up to CREST. Wrong. There was a strict liability claim. Go back to the Atlantic Mutual complaint. And they say, we bought a part, whoever manufactured the defective part, it came through the chain of commerce to us, they are directly liable. So it is not true when KRP had claims that the claims were solely against us and that their only recourse was against us. And that was a very critical point. And in this particular case, the universe of the types of damages, loss to reputation, loss of customers, loss of profits, and destroying your own inventory, is damage that is directly suffered by the Interplex entity. There are damages halfway across the world in Thailand that were simultaneously caused, like an automobile accident or a bus accident, that causes damages to multiple people. And there's never been a case, we talk about subrogation, all of the cases that they cite deal with a single car, and there's one universe of damage with one entity that suffered damage, and there's an insurance company that pays a portion of it. There's never been application of the claim-splitting doctrine where it's a third party that suffered damages, for example, you know, somebody who suffers a head injury. And the one case that's directly on point, which is the Flynn case, where you have both the passenger in the automobile and the driver, there was in the Flynn case an arbitration that went to final judgment, and that was found not to be claim-splitting because the equitable indemnity claim was damages to a separate person, and they applied the rule of Wittgen. Thank you. You may provide the answer on the amendment as well as the additional cases on the clerk's paper and provide a copy also to counsel. Yeah. I could only find silence, Your Honor. I could not find any overt statement by the Court that we put the facts in and they just came in without leave. All right. The case just argued, Interplex v. Crest, is submitted. Thank you, and we're adjourned for the morning. All rise. This Court, for this session, stands adjourned. Thank you, Your Honor.
judges: B. Fletcher, McKeown, Whyte